IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| PERFECTO CANIADIDO, | ) | CIVIL NO. 11-00080 SOM/BMK |
| | ) | |
|        Plaintiff, | ) | ORDER GRANTING DEFENDANTS |
| | ) | BANK OF AMERICA, N.A., AND |
|   vs. | ) | MORTGAGE ELECTRONIC |
| | ) | REGISTRATION SYSTEMS, INC.'S |
| COUNTRYWIDE BANK, FSB, | ) | MOTION TO DISMISS AND |
| CREATIVE CAPITAL AND | ) | PARTIALLY DISMISSING CLAIMS |
| MORTGAGE, | ) | AGAINST NONMOVING DEFENDANT |
| MORTGAGE ELECTRONIC | ) | *SUA SPONTE* |
| REGISTRATION SYSTEMS, INC., | ) | |
| | ) | |
|       Defendants. | ) | |
| | ) | |

ORDER GRANTING DEFENDANTS BANK OF AMERICA, N.A.,
AND MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.'S
MOTION TO DISMISS AND PARTIALLY DISMISSING CLAIMS AGAINST
NONMOVING DEFENDANT *SUA SPONTE*

I.      INTRODUCTION.

        Plaintiff Perfecto Caniadido asserts federal and state
law claims against several entities that participated in the
origination, settlement, and servicing of his mortgage and loan,
including Defendants Countrywide Bank, FSB ("Countrywide"),
Creative Capital and Mortgage ("Creative Capital"), and Mortgage
Electronic Registration Systems, Inc. ("MERS").  The transaction
occurred in July 2007.

        Bank of America, N.A., the successor in interest to
Countrywide, brings the present motion with MERS.  The movants
seek dismissal of all counts.  For the reasons set forth in this
order, the court GRANTS the motion and dismisses the Complaint
with leave to amend as to certain counts.  Given obvious pleading

defects applicable to all Defendants, the court also <u>sua sponte</u> dismisses the majority of claims against the nonmoving Defendant, Creative Capital.

II.      <u>FACTUAL BACKGROUND.</u>

Caniadido alleges that he obtained a loan from Creative Capital for $235,000 on or about July 24, 2007.  Compl. ¶ 2, ECF No. 1.  Caniadido alleges that the loan transaction refinanced a loan involving property in Kailua Kona, Hawaii.  Compl. ¶¶ 1, 2.

Caniadido recites, in general terms,[1] that mortgage brokers and lenders have engaged in predatory lending practices and that their loan to him was in fact a predatory lending transaction.  <u>See, e.g.</u>, Compl. ¶¶ 18-19.  Caniadido alleges that Defendants "intentionally concealed the negative implications of the loan they were offering, and as a result, Plaintiff faces the potential of losing his home to the very entity and entities who placed him in this position."  Compl. ¶ 19 at 6:3-5.

The Complaint asserts that the loan terms are "not clear or conspicuous, nor consistent, and are illegal, and include, for example, extremely high ratios with respect to Plaintiff's Income and Liabilities."  Compl. ¶ 22.  The Complaint

---

[1] This Complaint appears to be nearly identical in form to several other complaints filed by <u>pro se</u> plaintiffs in this court, all asserting the same twelve causes of action and attaching a "Forensic Audit Report" by Francha Services, LLC. <u>See</u> <u>Asao v. Citi Mortgage, Inc.</u>, Civ. No. 10-00553 SOM/KSC (D. Haw. Apr. 28, 2011) (citing several identical complaints).

also alleges that Creative Capital failed to verify Caniadido's income or employment. Compl. ¶ 27. The Complaint says that the terms of the loan are such that Caniadido "can never realistically repay the loan," and that Defendants knowingly made it impossible for Caniadido to ever own the subject property free and clear. Compl. ¶ 22 at 7:6; see also Compl. ¶ 28. According to the Complaint, Defendants failed to explain the "workings" of the mortgage transaction to Caniadido. Compl. ¶ 30.

Caniadido alleges that Defendants violated the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601-1667, by failing to issue initial disclosures, a correct payment schedule, proper interest rate, an accurate Good Faith Estimate, or a "CHARM booklet." Compl. ¶¶ 61-64. Caniadido also alleges that he received egregious loans that required him to pay unjustified interest rates, in violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601-2617. Compl. ¶ 73.

The Complaint asserts the following causes of action against all Defendants: (1) declaratory relief; (2) injunctive relief; (3) breach of implied covenant of good faith and fair dealing; (4) violations of TILA; (5) violations of RESPA; (6) rescission; (7) unfair and deceptive business practices; (8) breach of fiduciary duty; (9) unconscionability; (10) predatory lending; (11) quiet title. Compl. ¶¶ 43-111. The Complaint also asserts as a twelfth cause of action, solely against MERS, "Lack

of Standing; Improper Fictitious Entity." Compl. ¶¶ 112-19.
Caniadido seeks declaratory relief, an injunction enjoining
foreclosure, quiet title, rescission of the loan, damages, and
attorney's fees. Compl. at p.25.

On May 3, 2011, Bank of America and MERS filed a motion
to dismiss. ECF No. 14. Creative Capital has not entered an
appearance in this case. Caniadido did not file a written
Opposition to the instant motion. On June 20, 2011, this court
held a hearing on the motion during which Caniadido requested an
extension to file an Opposition. The court informed Caniadido
of its inclination to grant the motion to dismiss, but to allow
Caniadido a chance to file a revised Complaint, and Caniadido
acquiesced.

III.     STANDARD.

Rule 12(b)(6) of the Federal Rules of Civil Procedure
provides for dismissal of a complaint, or a claim therein, when a
claimant fails "to state a claim upon which relief can be
granted." Dismissal under Rule 12(b)(6) may be based on either:
(1) lack of a cognizable legal theory; or (2) insufficient facts
under a cognizable legal theory. Balistreri v. Pacifica Police
Dep't, 901 F.2d 696, 699 (9th Cir. 1988) (citing Robertson v.
Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir.
1984)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  That is, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556, 570 (2007); see Evanns v. AT&T Corp., 229 F.3d 837, 839 (9th Cir. 2000).

Under Rule 12(b)(6), the court's review is generally limited to the contents of the complaint.  See Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).  All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.  See Knievel v. ESPN, 393 F.3d 1068, 1072 (9th Cir. 2005).  Conclusory allegations and unwarranted inferences, however, are insufficient to defeat a motion to dismiss.  See Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007); Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 973 (9th Cir. 2004).

In particular, the court should "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  Iqbal, 129 S. Ct. at 1950.  The court should disregard "[t]hreadbare recitals of the elements of

a cause of action, supported by mere conclusory statements." Id.
at 1949. After eliminating such unsupported legal conclusions,
the court must identify "well-pleaded factual allegations," which
are assumed to be true, "and then determine whether they
plausibly give rise to an entitlement to relief." Id. at 1950.

IV.     ANALYSIS.

        Bank of America and MERS raise a myriad of challenges
to the Complaint. They argue that the Complaint fails to
identify sufficiently specific allegations against them, and that
each of the twelve causes of action fails for various reasons.[2]
See generally Mem. Supp. Mot. ("Mot.") at 6-37, ECF No. 14. The
court first addresses the global attack on the Complaint, then
turns to the arguments as to each specific Count. Because of the
similarity of the Complaints and the respective Defendants'
motions to dismiss, portions of the court's analysis here draw
heavily from its analyses in Balagso, Radford, Casino, and Asao.
See Balagso v. Aurora Loan Servs, LLC, Civ. No. 11-00029 SOM/BMK,
2011 WL 2133709 (D. Haw. May 26, 2011); Radford v. Wells Fargo

---

        [2] The Complaint also mentions the Equal Opportunity Credit
Act, Compl. ¶ 12; the "Fair Lending/Fair Debt Collection Act,"
id.; and the Federal Trade Commission Act, id. ¶ 41. Caniadido,
however, assert no claims for relief (i.e., no counts) for any
alleged violations of those federal laws. The Complaint as
written fails to state a claim for violations of those statutes.
Cf. Bautista v. Los Angeles Cnty., 216 F.3d 837, 840-41 (9th Cir.
2000) ("Courts have required separate counts where multiple
claims are asserted, where they arise out of separate
transactions or occurrences, and where separate statements will
facilitate a clear presentation.") (citations omitted).

<u>Bank</u>, Civ. No. 10-00767 SOM/KSC, 2011 WL 1833020 (D. Haw. May 13, 2011); <u>Casino v. Bank of Am.</u>, Civ No. 10-00728 SOM/BMK, 2011 WL 1704100 (D. Haw. May 4, 2011); <u>Asao v. Citi Mortgage, Inc.</u>, Civ. No. 10-00553 SOM/KSC (D. Haw. Apr. 28, 2011).

> A.   Specificity of Allegations Against Bank of America and MERS.

Rule 8(a) of the Federal Rules of Civil Procedure mandates a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This rule requires that "allegations in a complaint or counterclaim must be sufficiently detailed to give fair notice to the opposing party of the nature of the claim so that the party may effectively defend against it." <u>Starr v. Baca</u>, 633 F.3d 1191, 1204 (9th Cir. 2011). Failure to draft a complaint that complies with Rule 8 is grounds for dismissal under Rule 41(b) of the Federal Rules of Civil Procedure. <u>See</u> <u>Nevijel v. N. Coast Life Ins. Co.</u>, 651 F.2d 671, 673 (9th Cir. 1981).

Bank of America and MERS argue that the allegations against them should be dismissed because the Complaint fails to allege specific wrongdoing by either Defendant. Mot. at 6. The court agrees that the Complaint largely lacks specificity. However, it appears from Bank of America and MERS's motion to dismiss that they were able to sufficiently respond to the Complaint as drafted. Therefore, the court does not rely on Rule 8 in this dismissal order, although the court counsels Caniadido

to ensure that any Amended Complaint he may file states, as specifically as possible, the precise wrongdoing alleged on the part of each Defendant.  A complaint that fails to explain which allegations are relevant to which defendant is confusing.  This, in turn, "impose[s] unfair burdens on litigants and judges" because it requires both to waste time formulating their own best guesses of what the plaintiff may or may not have meant to assert, risking substantial confusion if their understanding is not equivalent to plaintiff's.  See McHenry v. Renne, 84 F.3d 1172, 1179-80 (9th Cir. 1996).

>>>>>B.   Counts I and II (Declaratory and Injunctive Relief).

Bank of America and MERS contend that Count I (Declaratory Relief) and Count II (Injunctive Relief) fail to state claims upon which relief can be granted because the claims are remedies, not independent causes of action.  The court agrees that these counts fail to state claims.  Mot. at 7-10.

Count I appears to seek relief under the Declaratory Judgment Act, 28 U.S.C. § 2201.[3]  Count I alleges that "[a]n

---

[3] The Declaratory Judgment Act provides in pertinent part:

a) In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

actual controversy has arisen and now exists between Plaintiff
and Defendants regarding their respective rights and duties, in
that Plaintiff contends that Defendants did not have the right to
foreclose on the Subject Property." Compl. ¶ 44. Caniadido asks
the court to declare that "the purported power of sale contained
in the Loan [is] of no force and effect at this time" because of
"numerous violations of State and Federal laws designed to
protect borrowers." Id. ¶ 45. The Complaint alleges that, "[a]s
a result of the Defendants' actions, Plaintiff has suffered
damages . . . and seeks declaratory relief that Defendants'
purported power of sale is void." Id. ¶ 46.

         As pled, Caniadido's declaratory relief claim is not
cognizable as an independent cause of action. See Seattle
Audubon Soc'y v. Moseley, 80 F.3d 1401, 1405 (9th Cir. 1996) ("A
declaratory judgment offers a means by which rights and
obligations may be adjudicated in cases brought by any interested
party involving an actual controversy that has not reached a
stage at which either party may seek a coercive remedy and in
cases where a party who could sue for coercive relief has not yet
done so.") (citation and quotation marks omitted). That is,
because Caniadido's claim is based on allegations regarding
Defendants' past wrongs, a claim under the Declaratory Judgment

---

28 U.S.C. § 2201(a).

Act is improper and essentially duplicates the other causes of action. See, e.g., Ballard v. Chase Bank USA, N.A., 2010 WL 5114952, at *8 (S.D. Cal. Dec. 9, 2010) ("A claim for declaratory relief 'rises or falls with [the] other claims.'") (alteration in original, citation omitted); Ruiz v. Mortg. Elec. Registration Sys., Inc., 2009 WL 2390824, at *6 (E.D. Cal. Aug. 3, 2009) (dismissing claim for declaratory judgment when foreclosure had already occurred and the plaintiff was seeking "to redress past wrongs"); Mangindin v. Washington Mut. Bank, 637 F. Supp. 2d 700, 707 (N.D. Cal. 2009) ("A claim for declaratory relief is unnecessary where an adequate remedy exists under some other cause of action."); Edejer v. DHI Mortg. Co., 2009 WL 1684714, at *11 (N.D. Cal. June 12, 2009) ("Plaintiff's declaratory relief cause of action fails because she seeks to redress past wrongs rather than a declaration as to future rights.").

    With respect to Count II, the court follows the well-settled rule that a claim for "injunctive relief" standing alone is not a cause of action. See, e.g., Henke v. Arco Midcon, L.L.C., 750 F. Supp. 2d 1052, 1059-60 (E.D. Mo. 2010) ("Injunctive relief, however, is a remedy, not an independent cause of action."); Jensen v. Quality Loan Serv. Corp., 702 F. Supp. 2d 1183, 1201 (E.D. Cal. 2010) ("A request for injunctive relief by itself does not state a cause of action") (quotation marks and citation omitted); Plan Pros, Inc. v. Zych, 2009 WL

10

928867, at *2 (D. Neb. Mar. 31, 2009) ("no independent cause of action for injunction exists"); <u>Motley v. Homecomings Fin., LLC</u>, 557 F. Supp. 2d 1005, 1014 (D. Minn. 2008) (same). Injunctive relief may be available if Caniadido is entitled to such a remedy on an independent cause of action.

Accordingly, the court DISMISSES Counts I and II without leave to amend. If Caniadido eventually prevails on an independent claim, the court will necessarily render a judgment setting forth (i.e., "declaring") as much and providing appropriate remedies. Similarly, if injunctive relief is proper, it will be because Caniadido prevails (or has met the necessary test for such relief under Rule 65 of the Federal Rules of Civil Procedure) on an independent cause of action. Although only two Defendants have moved to dismiss, this dismissal is as to all Defendants because Caniadido cannot prevail on these counts as to any Defendant. <u>See</u> <u>Omar v. Sea-Land Serv. Inc.</u>, 813 F.2d 986, 991 (9th Cir. 1987).

### C. Count III (Covenant of Good Faith and Fair Dealing).

Count III asserts a "Contractual Breach of Implied Covenant of Good Faith and Fair Dealing." Caniadido alleges that every contract imposes a duty of good faith and fair dealing "in its performance and its enforcement," Compl. ¶ 53, and that "Defendants willfully breached their implied covenant of good faith and fair dealing" by engaging in the acts alleged in the

11

Complaint (such as withholding disclosures or information, and "willfully plac[ing] Plaintiff[] in a loan that he did not qualify for"). Id. ¶ 56.

This claim in essence asserts the tort of "bad faith." See Best Place, Inc. v. Penn Am. Ins. Co., 82 Haw. 120, 128, 920 P.2d 334, 342 (1996) (adopting tort of bad faith for breach of implied covenant of good faith and fair dealing in an insurance contract). Although bad faith is an accepted tort when a plaintiff is a party to an insurance contract, the tort has not been recognized in Hawaii based on a mortgage loan contract.

Moreover, although commercial contracts for sale of goods also require good faith in their performance and enforcement, this obligation does not create an independent cause of action. See Stoebner Motors, Inc. v. Automobili Lamborghini S.P.A., 459 F. Supp. 2d 1028, 1037-38 (D. Haw. 2006). Hawaii courts have noted that "[o]ther jurisdictions recognizing the tort of bad faith . . . limit such claims to the insurance context or situations involving special relationships characterized by elements of fiduciary responsibility, public interest, and adhesion." Id. at 1037 (quoting Francis v. Lee Enters., 89 Haw. 234, 238, 971 P.2d 707, 711 (1999)). Caniadido thus does not properly plead an independent claim of bad faith.

Importantly, even assuming a bad faith tort exists outside the insurance context, "[a] party cannot breach the

covenant of good faith and fair dealing before a contract is
formed." Contreras v. Master Fin., Inc., 2011 WL 32513, at *3
(D. Nev. Jan. 4, 2011) (citing Indep. Order of Foresters v.
Donald, Lufkin & Jenrette, Inc., 157 F.3d 933, 941 (2d Cir. 1998)
("[A]n implied covenant relates only to the performance of
obligations under an extant contract, and not to any pre-contract
conduct.")).  Hawaii follows this distinction.  See Young v.
Allstate Ins. Co., 119 Haw. 403, 427, 198 P.3d 666, 690 (2008)
(indicating that the covenant of good faith does not extend to
activities occurring before consummation of an insurance
contract).

All of Count III's allegations concern precontract
activities (failing to disclose terms, failing to conduct proper
underwriting, and making an improper loan).  Defendants cannot be
liable for breaching a contract covenant when no contract
existed.  See id.; see also Larson v. Homecomings Fin., LLC, 680
F. Supp. 2d 1230, 1237 (D. Nev. 2009) ("Because Plaintiffs' claim
revolves entirely around alleged misrepresentations made before
the [mortgage loan] contract was entered into, [the bad faith
claim] fails as a matter of law.").

Even if Caniadido were attempting to assert bad faith
in the performance of a contractual right to foreclose, "a court
should not conclude that a foreclosure conducted in accordance
with the terms of a deed of trust constitutes a breach of the

13

implied covenant of good faith and fair dealing." Davenport v. Litton Loan Servicing, LP, 725 F. Supp. 2d 862, 884 (N.D. Cal. 2010) (citation omitted).  "The covenant [of good faith] does not 'impose any affirmative duty of moderation in the enforcement of legal rights.'"  Id. (quoting Price v. Wells Fargo Bank, 261 Cal. Rptr. 735, 742 (Cal. Ct. App. 1989), modified on denial of reh'g, 261 Cal. Rptr. 735 (Cal. Ct. App. 1989)).

Accordingly, Count III is DISMISSED.  Because further amendment would be futile, dismissal of Count III is without leave to amend.  This dismissal is as to all Defendants.  See Omar, 813 F.2d at 991.

### D.   Count IV (TILA).

Alleging that Defendants violated TILA in issuing the mortgage and loan, Caniadido seeks rescission and damages.  See Compl. ¶¶ 60-68.  As explained below, the court concludes that Caniadido's TILA rescission claim is subject to dismissal as to all Defendants because Caniadido lacks a timely rescissionary remedy for any asserted violations of TILA (and is precluded from asserting any right to equitable tolling).  See 15 U.S.C. § 1635(a).  Caniadido's TILA damages claim is subject to dismissal as to Bank of America and MERS because their motion to dismiss challenges the Complaint on statute of limitations grounds and Caniadido fails to allege that equitable tolling may apply.  15 U.S.C. § 1640(a); Hubbard v. Fidelity Fed. Bank, 91

14

F.3d 75, 79 (9th Cir. 1996).  However, because Creative Capital
is not a moving party and has not sought to assert the
affirmative defense of statute of limitations, the court declines
to dismiss Caniadido's TILA damages claim sua sponte as to the
nonmoving Defendant.

Under TILA, borrowers have the right to rescind certain
credit transactions in which the lender retains a security
interest in the borrower's principal dwelling.  15 U.S.C.
§ 1635(a).  The borrower has the right to rescind the transaction
for three business days following the later of the date of the
transaction's consummation or the date of the delivery of the
information, rescission forms, and material disclosures required
by TILA.  Id.  If the required information, rescission forms, or
material disclosures are not delivered by the creditor, the right
to rescind expires three years after the transaction's
consummation.  Id. § 1635(f); King v. Cal., 784 F.2d 910, 915
(9th Cir. 1986).  The statute of limitations applicable to TILA
rescission is not subject to equitable tolling.  See Beach v.
Ocwen Fed. Bank, 523 U.S. 410, 411–13 (1998).

Pursuant to the statute and Regulation Z, 12 C.F.R.
Pt. 226, a borrower may exercise the right to rescind by
notifying the creditor of his intention to do so.  See 15 U.S.C.
§ 1635(a); 12 C.F.R. § 226.23.

Caniadido alleges that the transaction was consummated "on or about" July 24, 2007.  <u>See</u> Compl. ¶ 2.  Even assuming Caniadido were entitled to the extended rescission period, his time to rescind the loan expired three years from that date, in July 2010.  Caniadido did not file his Complaint seeking rescission until February 2011.  Because more than three years have passed, Caniadido cannot rescind his loan.

Caniadido's damage remedy under TILA is also time-barred as to Bank of America and MERS.  A TILA plaintiff may seek actual damages for a lender's failure to provide proper disclosures.  <u>See</u> 15 U.S.C. § 1640(a).  Under 15 U.S.C. § 1640(e), however, an action for damages by a private individual must be instituted "within one year from the date of the occurrence of the violation."  The Ninth Circuit has interpreted this to mean that the limitations period for a damage claim based on allegedly omitted or inaccurate disclosures begins on "the date of consummation of the transaction."  <u>King</u>, 784 F.2d at 915; <u>see also</u> <u>Hubbard</u>, 91 F.3d at 79 (holding that when a lender fails to comply with TILA's initial disclosure requirements, a borrower has one year from obtaining the loan to file suit).  To the extent Caniadido seeks money damages for TILA violations arising out of the July 2007 loan, those claims against Bank of America and MERS are barred by the one-year statute of limitation, as Caniadido did not file his Complaint until February 1, 2011.

Caniadido fails to argue that the statute should be equitably tolled. Courts may toll the limitations period if the one-year rule would be unjust or would frustrate TILA's purpose. See King, 784 F.2d at 915. For example, if a borrower had no reason or opportunity to discover the fraud or nondisclosures that form the basis of a borrower's TILA claim, the court may toll the statute of limitations. Id.; see also Huseman v. Icicle Seafoods, Inc., 471 F.3d 1116, 1120 (9th Cir. 2006) (explaining that tolling the statute of limitations is a factual determination that "focuses on whether there was excusable delay by the plaintiff and may be applied if, despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of his claim").

Caniadido does not point to any specific information that was concealed or even allege that any specific matter somehow prevented him from discovering any potential TILA claim. The acts of qualifying Caniadido for a loan he could not repay, failing to make disclosures, charging "exorbitant fees," and transferring the loan do not suggest that Defendants sought to conceal information from Caniadido about what he was legally entitled to have received. It therefore appears that any TILA money damage claim arising out of allegedly inaccurate or incomplete disclosures is time-barred as to Bank of America and MERS. Cf. Hubbard, 91 F.3d at 79 (denying equitable tolling

17

because borrower had the ability to compare the initial
disclosures she received with TILA's requirements and thereby
learn that the loan disclosures were inadequate).

In considering the TILA damage claims against nonmoving
Defendant Creative Capital, this court takes a more restrained
approach to the statute of limitations issue than it does with
moving Defendants.  This is the same approach this court took
with respect to a TILA limitations issue in its earlier decisions
in Balagso v. Aurora Loan Servs, LLC, Civ. No. 11-00029 SOM/BMK,
2011 WL 2133709 (D. Haw. May 26, 2011), Radford v. Wells Fargo
Bank, Civ. No. 10-00767 SOM/KSC, 2011 WL 1833020 (D. Haw. May 13,
2011), Casino v. Bank of Am., Civ No. 10-00728 SOM/BMK, 2011 WL
1704100 (D. Haw. May 4, 2011), and Asao v. Citi Mortgage, Inc.,
Civ. No. 10-00553 SOM/KSC (D. Haw. Apr. 28, 2011).  Here, Bank of
America and MERS have placed the limitations issue squarely
before the court in their motion and have met their burden with
respect to this affirmative defense.  Caniadido was obligated to
address this issue in response.  Creative Capital, by contrast,
has as of yet made no showing of carrying its burden on this
affirmative defense.

This court hesitates to dismiss claims sua sponte in
reliance on an affirmative defense that has not been raised.  The
court concludes that, with respect to nonmoving Defendant
Creative Capital, the better course is to wait until Creative

18

Capital is served and enters an appearance, and then either to allow Caniadido to be heard on the issue via the issuance of an order to show cause why a claim should not be dismissed for untimeliness, or to wait for Creative Capital to bring its own motion on the issue. Although it does appear to this court that Caniadido may face a limitations problem with his TILA damage claim against nonmoving Defendant, this court declines to dismiss sua sponte on the limitations issue and opts to wait for a motion by Creative Capital. The court sees little likelihood that, having failed to establish equitable tolling of the limitations period with respect to Bank of America and MERS, Caniadido could establish that equitable tolling overcomes the limitations statute with respect to TILA damage claims against nonmoving Defendant. Still, to deny Caniadido the opportunity to make that attempt would be tantamount to requiring a plaintiff to include averments about equitable tolling in a complaint. Such a requirement would turn the concept of an affirmative defense on its head; it would require a plaintiff to address an affirmative defense before it was even raised by a defendant and would entirely erase a defendant's burden to assert and establish an affirmative defense.

The court, of course, is aware that any claim may be dismissed under Rule 12(b)(6) on limitations grounds when that ground is "apparent on the face of the complaint." Von Saher v.

<u>Norton Simon Museum of Art at Pasadena</u>, 592 F.3d 954, 969 (9th Cir. 2010).  A <u>sua sponte</u> dismissal, however, does not have the benefit of the adversarial system contemplated by a motion brought under Rule 12(b)(6).  This gives the court pause even though the court would apply Rule 12(b)(6) tenets to a <u>sua sponte</u> dismissal.  Thus, the court notes that the Ninth Circuit was examining an element of a claim on which the plaintiff had the burden of proof when it said in <u>Omar</u> that a court may dismiss a claim <u>sua sponte</u> if "the claimant cannot possibly win relief." 813 F.2d at 991.  As the limitations period is a matter on which a defendant bears the burden, this court does not here <u>sua sponte</u> dismiss the damage claim against Creative Capital on statute of limitations grounds.[4]

Accordingly, the court GRANTS the motion to dismiss Caniadido's TILA claims as to Bank of America and MERS.  With respect to Creative Capital, the court DISMISSES <u>sua sponte</u> Caniadido's rescission claim only.  This leaves pending the TILA damage claim against the nonmoving party.

      E.   <u>Count V (RESPA).</u>

Caniadido's RESPA claim is also subject to dismissal. The Complaint alleges that: (1) Defendants received "egregious"

---

[4] Nor does the court rely on Bank of America and MERS's argument that the Complaint fails to plead reliance.  <u>See</u> Mot. at 15.  Reliance is not a requirement that must be pled to state a claim for statutory damages, which are available for the failure to make certain initial disclosures.  <u>See</u> 15 U.S.C. § 1640.

fees for making the loan; and (2) Caniadido did not receive a

Special Information Booklet explaining settlement costs.  Compl.

¶¶ 73, 75.  The Complaint asserts general violations of 12 U.S.C.

§§ 2601-2617.  Compl. ¶¶ 70, 72.

Any possible claims for violations of 12 U.S.C. §§ 2603

or 2604 for failing to provide a "good faith estimate" or

"uniform settlement statement" necessarily fail because there is

no private cause of action for a violation of those sections.

See Martinez v. Wells Fargo Home Mortg., Inc., 598 F.3d 549, 557

(9th Cir. 2010).  Failure to provide a Special Information

booklet on settlement costs at the time of closing is not a

viable private cause of action under RESPA.  See Martinez, 598

F.3d at 557-58 (refusing to allow a private cause of action under

12 U.S.C. § 2603, in connection with allegations that HUD-1

settlement statements were not accurately disclosed).  Thus, the

court dismisses Caniadido's claim that Defendants failed to

provide a booklet on settlement costs.

Caniadido also appears to be asserting a RESPA claim

under 12 U.S.C. § 2607 for illegal fees at closing.  To the

extent Count V claims that Defendants received excessive fees,

that claim under RESPA fails as a matter of law because § 2607

does not prohibit excessive fees, provided the fees were in

exchange for real estate settlement services that were actually

performed by the recipient.  See Martinez, 598 F.3d at 553-54

(concluding that, by prohibiting fees "other than for services actually performed," § 2607, "by negative implication, . . . cannot be read to prohibit charging fees, excessive or otherwise, when those fees are for services that were actually performed").

As for other RESPA claims not falling under §§ 2603, 2604, or 2607, Caniadido's allegations are too vague to state a claim for relief against any Defendant and are dismissed on that ground.

The movants argue that the RESPA claim is also time-barred. The statute of limitations for a RESPA claim is either one or three years from the date of the violation, depending on the type of violation. See 12 U.S.C. § 2614. As Caniadido has not responded to this issue, the court relies on the limitation ground as an additional basis for dismissal of the RESPA claim against the movants.

In considering the RESPA claims against nonmoving Defendant Creative Capital, this court takes a more restrained approach to the statute of limitations issue than it does with the moving Defendants. As discussed in detail with respect to the TILA claim, because a limitations defense is an affirmative defense that a defendant has the burden of asserting and establishing, the court distinguishes between the moving and nonmoving Defendants in relying on the limitations ground. With respect to Count V, however, this distinction does not affect the

result here, as there are other grounds for dismissing Count V as against nonmoving Defendant.

In summary, the court DISMISSES Caniadido's RESPA claim without leave to amend as to (1) any claim under § 2607 asserting that a fee was "excessive" or otherwise for services that were actually performed, or (2) any claim under §§ 2603 or 2604. Allowing amendments on those matters as to any Defendant would be futile. See Martinez, 598 F.3d at 554, 557. Accordingly, because the Complaint fails to state a cause of action for violation of RESPA, the court GRANTS Defendants' motion to dismiss the RESPA claim with leave to amend. The dismissal is as to all Defendants. See Omar, 813 F.2d at 991. If Caniadido chooses to amend his RESPA claim, he may want to consider whether he could overcome the limitations issue with respect to Creative Capital.

F.   Count VI (Rescission).

Count VI asserts that "Plaintiff is entitled to rescind the loan for all of the foregoing reasons: 1) TILA Violations; 2) RESPA; 3) Fraudulent Concealment; 4) Deceptive Acts and Practices (UDAP) and 5) Public Policy Grounds, each of which provides independent grounds for relief." Compl. ¶ 78. As the court noted with respect to the remedies sought in Counts I and II, the remedy sought in Count VI (rescission) "is only a remedy, not a cause of action." Bischoff v. Cook, 118 Haw. 154, 163, 185 P.3d

902, 911 (Ct. App. 2008).  The remedy thus "rises or falls with
[the] other claims."  Ballard, 2010 WL 5114952, at *8 (alteration
in original).  Indeed, as alleged here, Count VI specifically
acknowledges that it is seeking rescission based upon
"independent grounds for relief."

Accordingly, Count VI is DISMISSED without leave to
amend.  The court will address the merits of rescission when
addressing any independent claim allowing rescission.  The
dismissal is as to all Defendants.  See Omar, 813 F.2d at 991.

### G.    Count VII (Unfair and Deceptive Acts and Practices).

Count VII alleges that all Defendants are liable for
Unfair and Deceptive Acts and Practices by failing "to properly
adjust and disclose facts and circumstances relating to
Plaintiff's mortgage loan and placed Plaintiff in a loan
. . . which [he] should never have been approved for because [he]
could not afford it."  Compl. ¶ 83.  Caniadido alleges that
Defendants "failed to undergo a diligent underwriting process,"
and had "knowledge of these facts, circumstances and risks but
failed to disclose them."  Id.  Count VII appears to be brought
under Hawaii's UDAP law, section 480-2(a) of Hawaii Revised
Statutes, which states, "Unfair methods of competition and unfair
or deceptive acts or practices in the conduct of any trade or
commerce are unlawful."

Caniadido does not state a claim under section 480-2 of the Hawaii Revised Statutes because "lenders generally owe no duty to a borrower 'not to place borrowers in a loan even where there was a foreseeable risk borrowers would be unable to repay.'" McCarty v. GCP Mgmt., LLC, 2010 WL 4812763, at *6 (D. Haw. Nov. 17, 2010) (quoting Champlaie v. BAC Home Loans Servicing, LP, 706 F. Supp. 2d 1029, 1061 (E.D. Cal. 2009)). See also Sheets v. DHI Mortg. Co., 2009 WL 2171085, at *4 (E.D. Cal. July 20, 2009) (reasoning that no duty exists "for a lender 'to determine the borrower's ability to repay the loan. . . . The lender's efforts to determine the creditworthiness and ability to repay by a borrower are for the lender's protection, not the borrower's.'" (quoting Renteria v. United States, 452 F. Supp. 2d 910, 922-23 (D. Ariz. 2006)).

"[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." Nymark v. Heart Fed. Sav. & Loan Ass'n, 283 Cal. Rptr. 53, 56 (Cal. Ct. App. 1991). Nothing in the Complaint indicates that any Defendant "exceed[ed] the scope of [a] conventional role as a mere lender of money." The claims fail on that basis alone. The court, however, cannot conclude at this time that further amendment is futile and allows Caniadido an opportunity to amend Count VII to

25

attempt to state a section 480-2 claim.  Count VII is DISMISSED
with leave to amend as to all Defendants.  See Omar, 813 F.2d at
991.

>    H.   Count VIII (Breach of Fiduciary Duty).

Count VIII alleges, without distinguishing between
various Defendants, that "Defendants owed a fiduciary duty to
Plaintiff and breached that duty by [f]ailing to advise or notify
Plaintiff . . . that Plaintiff would or had a likelihood of
defaulting on the loan."  Compl. ¶ 89.  Defendants also allegedly
breached a fiduciary duty owed to Caniadido by "exercis[ing] a
greater level of loyalty to each other by providing each other
with financial advantages under the loan without disclosing their
relation to one another to Plaintiff[s]."  Id. ¶ 90.

Count VIII fails to state a claim against the lender
Defendants.  As noted earlier, a borrower-lender relationship is
not fiduciary in nature:

> Lenders generally owe no fiduciary duties to
> their borrowers.  See, e.g., Spencer v. DHI
> Mortg. Co., 642 F. Supp. 2d 1153, 1161 (E.D.
> Cal. 2009) ("Absent 'special circumstances' a
> loan transaction 'is at arms-length and there
> is no fiduciary relationship between the
> borrower and lender.'") (quoting Oaks Mgmt.
> Corp. v. Super. Ct., 51 Cal. Rptr. 3d 561
> (Cal. Ct. App. 2006)); Ellipso, Inc. v. Mann,
> 541 F. Supp. 2d 365, 373 (D.D.C. 2008)
> ("[T]he relationship between a debtor and a
> creditor is ordinarily a contractual
> relationship . . . and is not fiduciary in
> nature.") (citation omitted); Nymark v. Heart
> Fed. Sav. & Loan Ass'n, 283 Cal. Rptr. 53, 54
> n.1 (Cal. Ct. App. 1991) ("The relationship

26

between a lending institution and its
borrower-client is not fiduciary in
nature.").

<u>McCarty</u>, 2010 WL 4812763, at *5.

Nothing in the Complaint alleges "special circumstances" that might impose a fiduciary duty in this mortgage-lending situation, much less a fiduciary duty owed by loan servicers like Bank of America or MERS.  See, e.g., Phillips v. Bank of Am., Civ. No. 10-00551 JMS-KSC, 2011 WL 240813, at * 11 (D. Haw. Jan. 21, 2011) ("Plaintiff cites no authority for the proposition that AHMSI or Deutsche owed a duty to not cause plaintiff harm in their capacities as servicer and [successor] to the original lender in ownership of the loan, respectively. . . . In fact, loan servicers do not owe a duty to the borrowers of the loans they service.") (citation omitted); see also Castaneda v. Saxon Mortg. Servs., Inc. 687 F. Supp. 2d 1191, 1198 (E.D. Cal. 2009).  Count VIII is DISMISSED with leave to amend as to all Defendants.

> I.    Count IX (Unconscionability).

Count IX asserts "Unconscionability-UCC-2-3202 [sic 2-302]."  Count IX further asserts that courts may refuse to enforce a contract or portions of a contract that are unconscionable, Compl. ¶ 94, and that courts are to give parties an opportunity to present evidence regarding a contract's

27

"commercial setting, purpose and effect" to determine if a contract is unconscionable.  Id. ¶ 95.  It goes on to allege:

> Here, based on the deception, unfair
> bargaining position, lack of adherence to the
> regulations, civil codes and federal
> standards that the Defendants were require[d]
> to follow; coupled with the windfall that the
> Defendants reaped financially from their
> predatory practices upon Plaintiff[], the
> court may find that the loan agreement and
> trust deed are unconscionable and of no force
> or effect.

Id. ¶ 96.

Unconscionability is generally a defense to the enforcement of a contract, not a proper claim for affirmative relief.  See, e.g., Gaitan v. Mortg. Elec. Registration Sys., 2009 WL 3244729, at *13 (C.D. Cal. Oct. 5, 2009) ("Unconscionability may be raised as a defense in a contract claim, or as a legal argument in support of some other claim, but it does not constitute a claim on its own."); see also Barnard v. Home Depot U.S.A., Inc., 2006 WL 3063430, at *3 n.3 (W.D. Tex. Oct. 27, 2006) (citing numerous cases for the proposition that neither the common law nor the Uniform Commercial Code allows affirmative relief for unconscionability).

To the extent unconscionability can be addressed affirmatively as part of a different or independent cause of action, such a claim "is asserted to prevent the enforcement of a contract whose terms are unconscionable."  Skaggs v. HSBC Bank USA, N.A., 2010 WL 5390127, at *3 (D. Haw. Dec. 22, 2010)

(emphasis in original).[5]  Skaggs dismissed a "claim" for
unconscionability because it challenged only conduct such as
"obtaining mortgages under false pretenses and by charging
Plaintiff inflated and unnecessary charges," and "failing to give
Plaintiff required documents in a timely manner," but not the
breach of any specific contractual term.  Id.  Count IX similarly
fails to identify or challenge any particular contract term as
unconscionable.

     Count IX is DISMISSED with leave to amend.  This
dismissal is as to all Defendants.  See Omar, 813 F.2d at 991.

          J.   Count X (Predatory Lending).

     Count X asserts "Predatory Lending" and lists a variety
of alleged wrongs (e.g., failure to disclose terms and conditions
or material facts, targeting of unsophisticated persons, unfair
loan terms, and improper underwriting) that form the bases of
other causes of action.  Compl. ¶¶ 98-107.

_____

     [5] In Skaggs, the court noted in dicta that "at least one
Hawaii court has addressed unconscionability when raised as a
claim seeking rescission."  2010 WL 5390127, at *3 n.2 (citing
Thompson v. AIG Haw. Ins. Co., 111 Haw. 413, 142 P.3d 277
(2006)).  This was not an indication that one could raise an
affirmative claim for "unconscionability."  Indeed, in Thompson,
the complaint did not assert a separate count for rescission or
unconscionability.  See Thompson, 111 Haw. at 417, 142 P.3d at
281 (indicating that the specific counts were for negligence,
fraud, breach of duty, and unfair and deceptive trade practices
under Haw. Rev. Stat. § 480-2).  In Thompson, the remedy of
rescission was based on an independent claim.  Similarly, a
remedy for an unconscionable contract may be possible; a
stand-alone claim asserting only "unconscionability," however, is
improper.  See, e.g., Gaitan, 2009 WL 3244729, at *13.

The common law does not support a claim for "predatory lending." <u>See</u> <u>Haidar v. BAC Home Loans Servicing, LP</u>, 2010 WL 3259844, at *2 (E.D. Mich. Aug. 18, 2010) (agreeing that "there is no cause of action for predatory lending"); <u>Pham v. Bank of Am., N.A.</u>, 2010 WL 3184263, at *4 (N.D. Cal. Aug. 11, 2010) ("There is no common law claim for predatory lending"). To the extent such "predatory" practices provide a claim for relief, they appear to be grounded in statutes or other common-law causes of action such as fraud. The term "predatory lending" is otherwise too broad. <u>See</u> <u>Vissuet v. Indymac Mortg. Servs.</u>, 2010 WL 1031013, at *3 (S.D. Cal. Mar. 19, 2010) (dismissing claim for "predatory lending" with leave to amend and noting that the term is expansive and fails to provide proper notice, leaving defendants "to guess whether this cause of action is based on an alleged violation of federal law, state law, common law, or some combination"); <u>see also</u> <u>Hambrick v. Bear Stearns Residential Mortg.</u>, 2008 WL 5132047, at *2 (N.D. Miss. Dec. 5, 2008) (dismissing a claim for predatory lending that failed to cite any "[state] or applicable federal law, precedential or statutory, creating a cause of action for 'predatory lending.'").

Count X fails to state a cause of action. This does not, of course, mean that "predatory lending" cannot form the basis of some cause of action. Instead, the dismissal signifies that Hawaii courts have not recognized "predatory lending" itself

as a common law cause of action.  The ambiguous term "predatory lending" potentially encompasses a wide variety of alleged wrongdoing.  The cause of action pled here fails to provide notice to any Defendant of what is being claimed.  See Vissuet, 2010 WL 1031013, at *3.

Count X is DISMISSED with leave to amend as to all Defendants.  Caniadido may attempt to state a cause of action based on specific activities (which might be described as "predatory") provided that any new predatory lending claim is based on a recognized statutory or common law theory.  In other words, Caniadido may not simply reallege a general claim for "predatory lending."

K.   Count XI (Quiet Title).

Count XI alleges that Defendants have "no legal or equitable right, claim, or interest in the Property," Compl. ¶ 110, and that Caniadido is entitled to a declaration that "the title to the Subject Property is vested in Plaintiff[] alone." Id. ¶ 111.

Caniadido appears to be making a claim under section 669-1(a) of Hawaii Revised Statutes.  That statute provides that a quiet title "[a]ction may be brought by any person against another person who claims, or who may claim adversely to the plaintiff, an estate or interest in real property, for the purpose of determining the adverse claim."  Caniadido has not

alleged sufficient facts regarding the interests of various parties to make out a cognizable claim for "quiet title." He has merely alleged elements of section 669-1 without stating a claim. See Iqbal, 129 S. Ct. at 1949 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" is insufficient.). Throughout the Complaint, Caniadido makes blanket statements about Defendants as if they were a unit. As the court is unable to determine what rights and interests each Defendant allegedly is claiming in the Subject Property, the claim for quiet title fails.

Count XI is DISMISSED with leave to amend as to all Defendants.

L.   Count XII (Lack of Standing; Improper Fictitious Entity).

Count XII asserts a claim for "Lack of Standing; Improper Fictitious Entity" against MERS. Compl. ¶¶ 117-24. Count XII fails to state a claim because a claim for "lack of standing" may not be alleged against a defendant. Rather, standing is a requirement for a *plaintiff* in order to proceed in a civil lawsuit. See generally Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (explaining requirements for plaintiffs to establish constitutional standing); Lake Washington Sch. Dist. No. 414 v. Office of Superintendent of Pub. Instruction, 634 F.3d 1065, 1067-68 (9th Cir. 2011) (explaining that plaintiffs must also establish statutory standing, when applicable).

Count XII alleges generally that MERS is an artificial entity that is "designed to circumvent certain laws and other legal requirements dealing with mortgage loans." Compl. ¶ 115. Caniadido asserts that an assignment of the note or mortgage to MERS is illegal, id. ¶ 116, and that therefore "MERS has no legal standing to foreclose." Id. ¶ 119. Caniadido appears to be alleging that MERS may not foreclose (or has improperly foreclosed) because it is not a holder of the note. If this is the purpose of Count XII, the court will allow Caniadido an opportunity to clarify the factual allegations as to MERS. Caniadido may, if appropriate, attempt in an Amended Complaint to assert alleged illegalities as to MERS's status in an independent cause of action, but not based on "Lack of Standing; Improper Fictitious Entity." Accordingly, Count XII is DISMISSED with leave to amend as to MERS only.

V.       CONCLUSION.

For the reasons stated above, the court GRANTS Bank of America and MERS's motion to dismiss as to all Counts. The court dismisses all Counts sua sponte except Count IV (the TILA damage claim) with respect to Creative Capital.

With respect to all Defendants, Caniadido is granted leave to amend part of Count V (not including "excessive" fee claims or claims made under 12 U.S.C. §§ 2603 or 2604), and the entirety of Counts VII, VIII, IX, X, and XI. Caniadido is

further granted leave to amend part of Count IV (for damages under TILA) against Creative Capital, and the entirety of Count XII as to MERS.

Counts I, II, III, part of Count IV (for rescission under TILA), part of Count V (for "excessive" fees and for any claim under 12 U.S.C. §§ 2603 or 2604), as well as all of Count VI, are DISMISSED without leave to amend as to all Defendants. The TILA rescission claim in Count IV as asserted against movants is also DISMISSED without leave to amend.

Any Amended Complaint must be filed no later than July 19, 2011. If Caniadido chooses to file an Amended Complaint, he must clearly state how each named Defendant has injured him. In other words, Caniadido should explain, in clear and concise allegations, what each Defendant did and how those specific facts create a plausible claim for relief. Caniadido should not include facts that are not directly relevant to his claims.

Failure to file an Amended Complaint by the deadline will result in the automatic dismissal of all claims except the TILA damage claim in Count IV as asserted against Creative Capital. In preparing an Amended Complaint, Caniadido is urged to meet the deficiencies identified in this order.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, June 20, 2011.



　/s/ Susan Oki Mollway　
Susan Oki Mollway
Chief United States District Judge

Caniadido v. Countrywide Bank, FSB, et al.; Civil No. 11-00080 SOM/BMK; ORDER GRANTING
DEFENDANTS' Bank of America SERVICES, LLC, AND MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS' MOTION TO DISMISS AND PARTIALLY DISMISSING CLAIMS AGAINST NONMOVING
DEFENDANTS *SUA SPONTE*.